And now our fourth and final case of the day, Black Voters Matter Fund v. Secretary of State for the State of Georgia. We have Mr. Young and Mr. Belenfante. Mr. Young, if you are ready to proceed, please begin. Thank you. May it please the court, my name is Sean Young and I represent plaintiffs in this case. And with the court's indulgence, I would like to begin with a quick analogy. Imagine that a Georgia county creates a new early voting location at the YMCA. But the YMCA refuses to open their doors for voting unless they get paid $5 for every voter that enters, pursuant to their usual $5 entrance fee. If the county requires voters to pay that $5 entrance fee, that would be unconstitutional. And here's why. The Elections Clause of the U.S. Constitution, that's Article I, Section 4, gives states broad authority to determine the manner in which the right to vote is exercised. But once the state has extended the right to vote in a particular manner, the 24th Amendment and the Equal Protection Clause imposes a narrow but strict prohibition on the government. It cannot abridge that right based on failure to pay a fee. That means when the state has extended the right to vote in a particular manner, the state can't require voters to then subsidize the very voting method that the state is responsible for establishing. I have, Mr. Young, I have an analogy for you. Let's say, do you recall when on Georgia 400 there was a toll road, 50 cents to go through, right? So what if during that time there was a polling place and for many voters it was a little bit faster and more convenient to take the toll road, but they could take the back roads for free. Is the government obligated to put 50 cents on everyone's peach pass so that they can more quickly and easily get to their polling place? No, and here's why. When it comes to the right to vote in person, the state's statutory obligation is to provide polling places and voting machines. That is the limit of the state's benefit. And so it is a neutral voter requirement to require voters to show up to exercise the right to vote that the state has extended. And the toll pass, as well as gas money, is incidental to satisfying that legitimate voter qualification. Why is that just as incidental as the toll for the Georgia 400 route to the polling place? Because the right to vote at issue here is the statutory right to judge 385, talk about the right to personally mail. Sections 384 and 389 provide for blank absentee ballots to be mailed out to Georgia voters anywhere. Section 384 provides voters special pre-addressed envelopes designed for mailing their ballot. And section 381 provides for unique identity verification procedures solely for those who exercise the right to vote by mail. It is like setting a goal. I want to make sure I understand if an important difference is physical voting places versus absentee voting, then why is your analogy right? Don't we need an analogy related to absentee voting rather than to ordinary polling places? Sure, your honor. The reason I make that analogy is because establishing the right to vote by mail through a particular manner pursuant to the elections clause is the functional equivalent of establishing the right to vote at a particular early voting location pursuant to that same authority. And once the statute indicates or once the government has established that voting method, at that point, those constitutional prohibitions are triggered. So here, the state has established the right to vote by mail, and now the 24th Amendment and the Equal Protection Clause come into play. So similarly situated voters, all of whom are ready to deposit their ballots into their mailboxes, and they'll have to pay transportation costs to get to the mailboxes, of course, are treated categorically differently for one reason and one reason only, their failure to pay those postal fees. And you're calling the postal fee, the stamp, a tax, correct? This is a poll tax situation according to your perspective. But you're not suggesting, but you're not suggesting it when I walk into a post office, say at Christmas time, I need to mail my Christmas cards and I buy stamps. You're not suggesting that stamps in that situation that I'm paying a tax, correct? Um, not necessarily for purposes of the 24th Amendment. Well, what about at all? Yeah, you have to say yes. I'm not talking about purposes. I'm saying is it a tax when I walk into a post office to purchase the stamp that I put on my Christmas cards so that the postal service will carry my Christmas cards to their destination? Is that a tax? Yes, under Jones, but that is not the end of it. It's a tax. It's not a, you're saying that it's not in effect a service fee, that the government is providing a service and I have now given them money to perform that service? Not under the 24th Amendment, no. So it's a tax when I buy it at the postal service, but if I pay UPS to deliver my cards, say their packages instead, that's not a tax. That's just a service fee with a private contractor, but the government taking my packages is in fact a tax that I'm paying. Yes, under the definition set out in Jones. The definition of tax is broad. I'll say that and that's what this court has said, but that doesn't, and it should be broad because as Harmon explained, we have to nullify sophisticated as well as simple-minded ways of impairing the right to vote, but that's not the end of it. So you, as I understand it, you're saying not paying for postage on absentee envelopes after furnishing the form in the addressed envelope, that's a sophisticated way of denying people their right to vote. You really, Georgia thought, gosh, let's be sure not to put a stamp on there and that way we can deny people their right to vote. No, but intent is irrelevant in the analysis. I thought you said the purpose in Jones is to guard against sophisticated as well as unsophisticated attempts to deny people the right to vote. This is not a sophisticated attempt or an unsophisticated one to deny anybody's right to vote. I apologize. I did not mean to imply that that was the purpose. What I do mean to say is that Jones clearly establishes that the definition of tax is any government monetary exaction that is not a penalty and the defendants do not dispute that it's a government monetary exaction and they don't dispute that it's not a penalty. Did Jones say that the only two categories of government charges for taxes and penalties, did it say that's it, there's no other possibility? Yes, for purposes of the 24th Amendment, Jones says in short, if a government monetary exaction is not a penalty, it is a tax. So if I go into a state park and I pay an admission fee, that's a tax? For purposes of the 24th Amendment, yes, but that isn't the end of the inquiry. If I go into a Smithsonian Museum gift shop and buy a t-shirt, that's a tax. Yes, if the government requires you to do that to vote, yes, it is. But if the government doesn't require me to do that to vote, it's not a tax. Right, because we're out of the 24th Amendment at that point. Well, but I mean, you said everything that's not a charge is a tax. That's for the 24th Amendment, yes, and the word tax can have different meanings in different legal contexts. Did Jones say for purposes of the 24th Amendment, there are only two possibilities, one is charge and one is tax? Yes, it says in short, if any government monetary exaction is not a penalty, it is a tax. You're not purporting to quote that, are you? I might have gotten a word or two wrong, but I believe I am quoting it, Your Honor. And just to potentially assuage some concerns, whether something is a tax or not doesn't end up, you still have to figure out whether the abridgment is by reason of failure to pay that tax. And when that tax, when the abridgment is by reason of failure to satisfy some voter qualification, that's fine. But here, defendants do not dispute that postal services have anything to do with voter qualifications. How could you say then that postage fee is a qualification under Harper, as I believe you've made that argument? No, I'm saying the postal fee is not a legitimate voter qualification under Harper. It has nothing to do with satisfying any legitimate voter qualifications, like identity or competing felony status. All it does is subsidize the very voting method that the state has extended, even if it's an- I understand your attempt to position. It would be this. If the state of Georgia wanted to, they could end voting by absentee by mail. No problem. But if they charge, if they say you've got to bring us your absentee or mail it to us, we'll let you mail it to us if that's more convenient. And that will allow you to vote where you might not vote otherwise. That violates the 24th Amendment. Correct. Even if the state extends the manner of voting- You understand how absurd that position is, I assume. You're just following your argument to its logical extent, which I deeply appreciate, because it shows me how that argument- I always hesitate to say this, but I don't know a judge in the United States of America that would accept that argument. Well, Your Honor, respectfully- You're entitled to make it, and you've run over time. I've taken you over. I apologize. Judge Pryor's opinion is persuasive in that respect. All right. Thank you, Mr. Young. Mr. Belenfante, you may proceed. Good morning, Your Honors. Josh Belenfante on behalf of Georgia Secretary of State Brad Raffensperger. As I think the questioning indicated, this case is actually not about a poll tax. It is instead about the inverse. The appellants challenged Georgia's legislature's decision not to subsidize or appropriate money to cover the cost of all mail-in absentee voting. And if there's any question to that, it can simply look to the second amended complaint in the addendum clause and the relief that the appellants seek, which is a judicial order compelling the state to, quote, provide prepaid postage returnable envelopes for absentee ballots. And as pointed out, no court in the country has said that if a state allows absentee ballots, if they don't subsidize the stamp, it's a poll tax, and for good reason. And here, the court should affirm the district court for three reasons. First, the appellants lack standing. Second, there is no poll tax imposed by the state of Georgia, focusing again on the words tax. And third, the equal protection claim fails because there is a rational basis for the state choosing not to subsidize that form of voting. I know the court has read the briefs and is familiar with the facts. I'll just point out a few things quickly. As the Supreme Court just ruled in the Brnovich decision versus Democratic National Committee in discussing Arizona law, it said that that state, quote, generally makes it very easy to vote. And many of the aspects that we see in Arizona law are present in Georgia. First, you can vote on where you can vote in person at a polling place, or you can request an absentee ballot up to 78 days before the election, free online at the secretary's website. You can return that absentee ballot to a county election office without using a stamp. You can now return it as based on legislation passed this year into county drop boxes, and every county must now have at least one drop box. And I think it's important to also recognize what the plaintiffs tell you in their 35. Only the states of Kansas, Iowa, and West Virginia fully subsidize mail-in balloting. This is quite different than Harmon and Harper, where in 1965, 46 states had already eliminated poll taxes. So with that context in mind, the first reason the court should affirm the district court's order, at least, is that the appellants lack standing. If you look at their reply brief at page 1 or 10, depending on which page number you use, the electronic or the other, they tell you that Georgia, quote, charges mail-in voters up to $1.65 in postal fees to cover the administrative costs of ballot delivery by mail. Your honors, that's the United States Postal Service that assesses that charge and that rate. And if the complaint is about the fact that election mail requires a stamp, the proper party is the United States Postal Service, not the secretary. And this case would be no different from Jacobson v. Florida Secretary of State decided by this court last year, where the court wrote that in the absence of any evidence that the secretary controls here postal rates, the voters and organizations likewise cannot rely on the secretary's general election authority to establish traceability. The injury of imposing the stamp requirement is not traceable to the secretary. Now in the alternative... Mr. Belenfante, can I ask you a question? I just want to clarify one point in your brief. You've referenced the United States Postal Service policy that you say requires the delivery of absentee ballots without postage. The district court did not find that there was sufficient support, that that policy didn't make this a slam-dunk case, I guess. Yes, we have the testimony about the policy, but we don't... The court has said that the postal service employees are instructed that absentee ballots containing insufficient or no postage should not be returned to the voter for additional postage. Was there any evidence in the court below that that postal service employees are actually given this instruction, or if they actually follow it? It was a mixed question, it was disputed, but I think given the procedural posture we're in now, where we're on a motion to dismiss, the court can presume that that policy is either not in effect or, as the plaintiffs have alleged, that the postal service will not deliver it with the mail. And that's still... that only highlights the second issue, because if that is in fact the issue, they should have brought the claim against the postal service, but the fact that they brought it against the state shows that the real argument is that the state is not appropriating funds to cover this cost. Your honors, in terms of legislation, appropriation and taxes are two very different things, and that's the second reason why the court should affirm, and it went to a lot of the questioning the court had, is that Georgia does not impose a poll tax. Turning to the text of the 24th Amendment itself, it's clear that what is actionable is when the right to vote is denied or abridged by reason of failure to pay a poll tax or any other tax. The word tax is critical, and Judge Branch, to your question, is the stamp a tax? The answer is no. Congress says no in Title 39 when it starts talking about rates and fees that are paid associated with taxes. It does not use the word tax. You can look even more basically at the Supreme Court's decision in the state of New Jersey against Anderson from 1906, where it says that taxes are, quote, imposts levied for the support of the government. Secretary Raffensperger imposts nothing, he levies nothing, and certainly postage rates are not returned to the state of Georgia. It's simply not a tax under any definition. Mr. Belamponte, I have a factual question. Do you know if election offices accept delivery of ballots from UPS or FedEx? They do. Election offices, any way you can get the ballot to the election office, they will accept it and they will count it if it arrives in their hand by personal delivery, mail, UPS, reindeer, it doesn't matter, they will take it. So if it doesn't matter who is assessing the fee, under the plaintiff's argument, would you say that Georgia should actually be required to pay for FedEx overnight first delivery? No, and your honor, that, you know, raises a very good point as well, and it goes to, frankly, your 400 analogy. The plaintiffs tell you in their brief at page 23 or 32 that the reason that it's a poll tax is some voters can only vote by mail for a host of circumstances. Here's those circumstances they tell you. The imposition made on time, transportation logistics, or the need to make child care arrangements. The logical conclusion of the plaintiff's argument is if those are burdens, the state now has to compensate persons for child care, time off of work, gasoline, bus fare, or anything else. But once again, turning to Branovich, the Supreme Court said that having to identify one's own polling place and then travel there does not exceed the usual burdens of voting. So you don't have that in this situation. Thus, the court can dispense of the argument and affirm the district court solely on the grounds that it's not a tax. Now, the appellants rely on Jones. And in Jones, the case or the situation, the analysis, if you will, was in fact binary, because it was dealing with a condition of reenfranchisement and a criminal sentence. And thus, the question was, if it was a penalty, it did not violate the poll tax. If it was a tax, it did. But as the court pointed out, the government raises revenue through a host of things that are not a tax or not a penalty. The National Park example was one I was going to use. We cite the Lorver decision from the Ninth Circuit in 1982, talking about sewer fees. And once again, if the court were to go down the line of anything that imposes a burden on a voter as a tax because there's a monetary extraction from it, that applies to gasoline, child care, transportation, logistics. Beyond the fact that there is no poll tax involved, there's simply no abridgment of the right to vote. And here, once again, the analysis starts with the text of the 24th Amendment. And it says that the right of citizens of the United States to vote shall not be denied by reason of failure to pay any poll tax or other tax. The inquiry, thus, is whether Georgians have a right to vote, or if it is a poll tax. I went through the facts at the beginning to illustrate the numerous ways that Georgians can vote, most of which do not require a stamp at all. It simply doesn't meet the textual analysis from the 24th Amendment. Mr. Young stated that, well, once you provide absentee ballots, that that has to be paid for. Your Honors, again, because we allow you to drop off absentee ballots at a voting location, are we now to pay for gas is the first question. But really, it's largely an academic one, because the Supreme Court said in McDonald against Board of Election Commissioners in 1969, there is no absolute right to an absentee ballot. And thus the court can dispense of that one as well. But given particularly the appellant's reliance on Jones and Chief Judge Pryor's concurrence in Jones, this court could take the opportunity to make that concurrence the law of the 11th Circuit. And if it does, it provides another reason to affirm the district court. As the Chief said, the 24th Amendment prohibits denials of the right to vote motivated by a person's failure to pay the tax. That's based on the textual part of the 24th Amendment that says, by reason of failing to pay a poll tax. And if you look back to Harmon from 1965, it was clear that the Virginia poll tax was quote, born of a desire to disenfranchise. There is no mail-in voting out of a purpose to disenfranchise. And if the court were to take this opportunity to make that concurrence, or the reasoning of that concurrence, the law, it simply provides another reason to affirm. The appellants also argue an equal protection claim. And here Jones matters greatly. When pressed in their reply brief, because they said that it's not a wealth distinction that matters. They tell you at page 26, or 35, that Georgia's postage requirement discriminates between voters who pay postal fees, and voters who do not pay postal fees. This is very similar to the issue in Jones, where the question was, quote, between felons who have completed all terms of their sentences, including financial terms, and those who have not. As the court in bank said, that is not a suspect classification and thus rational basis test applies. And citing the Trump against Hawaii decision from 2008 in the Supreme Court, the court acknowledged that the Supreme Court, quote, hardly ever strikes down a policy as illegitimate under the rational basis test, and it should not do so respectfully in this case. We cited for you the Ling versus UAW decision from the Supreme Court in 1988. There the court upheld against a rational basis challenge, the decision on food stamps. And the basis that the government put forth there was, quote, protecting fiscal integrity of the government's programs and the government as a whole. The same is true here. Georgia is not obligated under the 24th amendment to buy Georgians stamps, particularly when they can return the ballot without stamps. That basis resolves the equal protection claim completely. Your honors, respectfully, you should affirm because there is no poll tax involved. There is no abridgment of the right to vote. And there is a rational basis for the court, or excuse me, for the state not to appropriate funds to subsidize all methods of absentee voting. And unless there's any questions, I will conclude. Thank you, Mr. Belafonte. Mr. Young, you have six minutes left for rebuttal. If I may make three points, Your Honor. I'd like to interrupt you. I have the same question for you that I have for Mr. Belafonte. Why, under your theory of the case, is Georgia not required to offer compensation for overnight FedEx delivery? Why is that any different than a stamp? Because the statute's text guarantees the right to vote by mail. And the common understanding of the word mail is specifically use of the government postal service. And the envelopes they provide are specifically designed for that government postal service. They don't provide blank FedEx packaging, for instance. So once the government has decided to create that right, it cannot then ask voters to subsidize the government services to effectuate it. And if I may respectfully disagree with Judge Karns that no judge would hold that, we would welcome this court to elevate Chief Judge Pryor's concurrence in Part 3B2 of the opinion as the law of the land. As he says, the 24th Amendment, like the 15th and 19th Amendments, applies whenever the state sets a voter qualification that extends the right to some persons but denies it to others on a prohibited basis, even if that extension were, in his words, an act of grace. Thus, for instance, even if vote by mail is an act of grace, and we concede it is, the state would violate the 15th Amendment if it prohibited Black people from voting by mail. Has the state told anyone that they cannot vote by mail? No, I'm just saying, hypothetically, if the state were to prohibit Black people from voting by mail, it would clearly violate the 15th Amendment, even if voting by mail is something that the state granted as an act of grace in response to Judge Karns' question. Right, but you're not saying, even here, that the state has denied anyone the right to vote by mail, right? We are saying that the state has abridged the right to vote by conditioning the right to vote by mail solely on those who pay the fee. But you're not contending, allegation or argument, you're not contending that the state of Georgia has impeded to the extent that someone didn't vote who would otherwise have voted any voting by saying, you've got to put your own stamp on the envelope. You've not alleged that there was one fewer vote in any election because of the stamp requirement. No, because we are alleging that this has abridged the right to vote and not completely deny. And just as prohibiting Black people from voting by mail would abridge the right to vote, even if they could vote in person, abridging the right to vote on the basis of fee also satisfies that even if they can vote in person. I'm surprised that you would make an analogy between a specific racial discrimination saying that Black people can't vote to asking everyone to provide a stamp. The distinctions between saying Black people cannot vote by mail versus people who do not pay a fee can vote by mail. The reason I make that. I'm surprised that you would make that analogy. I make that analogy because the text, the operative text of both the 15th, 19th, and the 24th amendments are so similar. And Chief Judge Pryor also makes that analogy in the text that I quoted. So that is why, as he explains, if Florida decided to re-enfranchise felons solely based on race or sex, that would obviously violate the 15th and 19th. So that is the analogy that I'm seeking to rely on. And let me ask you this. Let me ask you this, counsel. Is there any de minimis standard or principle in your argument? Suppose the stamps were one cent. Good old days. Would that still violate the 24th amendment? Yes, even one cent is one cent too many under the strict standards of the 24th amendment clause. And the implications of defendants' arguments are staggering. Their definition of the right to vote would again allow the state to prohibit, and I apologize for using this analogy. It is the analogy that I find the most persuasive, black people from exercising early voting because early voting didn't exist in 1870. I do not think that that is a fair extension of their argument at all. Fair enough, Your Honor. I will say another extension of their argument. Let's say that the state required in-person voters to subsidize the trucks that are hired to deliver ballots from polling places to the central office. That would, in our view, also clearly violate the 24th amendment. And they can't just wave it away by saying, well, those are just ballot delivery costs. And that's because the right to vote, as the state has set out, includes the right to vote at a polling place. Once the voter satisfies those basic requirements that shows up, can't be asked to pay for anything that happens after that. The quote from Jones, I did get a few of the words wrong, but the quote says, in short, if a government exaction is a penalty, it is not a tax. That's entirely different from saying every exaction has to be a penalty or a tax. You know that. You are skilled in the use of hidden premises. And the hidden premises in your argument is every single exaction has to be either a penalty or a tax. And there is no authority for that. If there were a council, when somebody in the Tennessee Valley Authority area paid their electric bill, they would either be paying a penalty to the government or a tax to the government. And that's not what reality is. If I may quote the preceding sentence from Jones, I just would respectfully disagree. He says that this court says this distinction was well established when the 24th Amendment was adopted. And the distinction between tax and penalty, and it continues to define the outer limits of the term tax today. But again, it's just showing as a tax doesn't end the inquiry. The key is, is the right to vote being abridged by reason of failure to pay that tax. So just because Mr. Young, you've exceeded your time. Thanks to both council, we have your case under submission and we are in recess until tomorrow morning.